(Slip Opinion)          OCTOBER  TERM,  2007                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## VIRGINIA *v.* MOORE

### CERTIORARI TO THE SUPREME COURT OF VIRGINIA

No. 06–1082.   Argued January 14, 2008—Decided April 23, 2008

Rather than issuing the summons required by Virginia law, police arrested respondent Moore for the misdemeanor of driving on a suspended license. A search incident to the arrest yielded crack cocaine, and Moore was tried on drug charges. The trial court declined to suppress the evidence on Fourth Amendment grounds. Moore was convicted. Ultimately, the Virginia Supreme Court reversed, reasoning that the search violated the Fourth Amendment because the arresting officers should have issued a citation under state law, and the Fourth Amendment does not permit search incident to citation.

*Held:* The police did not violate the Fourth Amendment when they made an arrest that was based on probable cause but prohibited by state law, or when they performed a search incident to the arrest. Pp. 3–13.

   (a) Because the founding era's statutes and common law do not support Moore's view that the Fourth Amendment was intended to incorporate statutes, this is "not a case in which the claimant can point to a 'clear answer [that] existed in 1791 and has been generally adhered to by the traditions of our society ever since,'" *Atwater* v. *Lago Vista,* 532 U. S. 318, 345. Pp. 3–5.

   (b) Where history provides no conclusive answer, this Court has analyzed a search or seizure in light of traditional reasonableness standards "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming* v. *Houghton*, 526 U. S. 295, 300. Applying that methodology, this Court has held that when an officer has probable cause to believe a person committed even a minor crime, the arrest is constitutionally reasonable. *Atwater, supra,* at 354. This Court's decisions counsel against changing the calculus when a State chooses to

Syllabus

protect privacy beyond the level required by the Fourth Amendment. See, *e.g., Wren* v. *United States*, 517 U. S. 35. *United States* v. *Di Re*, 332 U. S. 581, distinguished. Pp. 6–8.

(c) The Court adheres to this approach because an arrest based on probable cause serves interests that justify seizure. Arrest ensures that a suspect appears to answer charges and does not continue a crime, and it safeguards evidence and enables officers to conduct an in-custody investigation. A State's choice of a more restrictive search-and-seizure policy does not render less restrictive ones unreasonable, and hence unconstitutional. While States are free to require their officers to engage in nuanced determinations of the need for arrest as a matter of their own law, the Fourth Amendment should reflect administrable bright-line rules. Incorporating state arrest rules into the Constitution would make Fourth Amendment protections as complex as the underlying state law, and variable from place to place and time to time. Pp. 8–11.

(d) The Court rejects Moore's argument that even if the Constitution allowed his arrest, it did not allow the arresting officers to search him. Officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence. *United States* v. *Robinson*, 414 U. S. 218. While officers issuing citations do not face the same danger, and thus do not have the same authority to search, *Knowles* v. *Iowa*, 525 U. S. 113, the officers arrested Moore, and therefore faced the risks that are "an adequate basis for treating all custodial arrests alike for purposes of search justification," *Robinson, supra,* at 235. Pp. 11–13.

272 Va. 717, 636 S. E. 2d 395, reversed and remanded.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, SOUTER, THOMAS, BREYER, and ALITO, JJ., joined. GINSBURG, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1082

VIRGINIA, PETITIONER *v.* DAVID LEE MOORE

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
VIRGINIA

[April 23, 2008]

JUSTICE SCALIA delivered the opinion of the Court.

We consider whether a police officer violates the Fourth
Amendment by making an arrest based on probable cause
but prohibited by state law.

I

On February 20, 2003, two City of Portsmouth police
officers stopped a car driven by David Lee Moore. They
had heard over the police radio that a person known as
"Chubs" was driving with a suspended license, and one of
the officers knew Moore by that nickname. The officers
determined that Moore's license was in fact suspended,
and arrested him for the misdemeanor of driving on a
suspended license, which is punishable under Virginia law
by a year in jail and a $2,500 fine, Va. Code Ann. §§18.2–
11, 18.2–272, 46.2–301(C) (Lexis 2005). The officers sub-
sequently searched Moore and found that he was carrying
16 grams of crack cocaine and $516 in cash.[1]  See 272 Va.

_____

[1] The arresting officers did not perform a search incident to arrest
immediately upon taking Moore into custody, because each of them
mistakenly believed that the other had done so. App. 54–55; see also
*id.*, at 33–34. They realized their mistake after arriving with Moore at
Moore's hotel room, which they had obtained his consent to search, and

717, 636 S. E. 2d 395 (2006); 45 Va. App. 146, 609 S. E. 2d
74 (2005).

Under state law, the officers should have issued Moore a
summons instead of arresting him. Driving on a sus-
pended license, like some other misdemeanors, is not an
arrestable offense except as to those who "fail or refuse to
discontinue" the violation, and those whom the officer
reasonably believes to be likely to disregard a summons,
or likely to harm themselves or others. Va. Code Ann.
§19.2–74 (Lexis 2004). The intermediate appellate court
found none of these circumstances applicable, and Virginia
did not appeal that determination. See 272 Va., at 720,
n. 3, 636 S. E. 2d, at 396–397, n. 3. Virginia also permits
arrest for driving on a suspended license in jurisdictions
where "prior general approval has been granted by order
of the general district court," Va. Code Ann. §46.2–936;
Virginia has never claimed such approval was in effect in
the county where Moore was arrested.

Moore was charged with possessing cocaine with the
intent to distribute it in violation of Virginia law. He filed
a pretrial motion to suppress the evidence from the arrest
search. Virginia law does not, as a general matter, require
suppression of evidence obtained in violation of state law.
See 45 Va. App., at 160–162, 609 S. E. 2d, at 82 (Annun-
ziata, J., dissenting). Moore argued, however, that sup-
pression was required by the Fourth Amendment. The
trial court denied the motion, and after a bench trial found
Moore guilty of the drug charge and sentenced him to a 5-
year prison term, with one year and six months of the
sentence suspended. The conviction was reversed by a
panel of Virginia's intermediate court on Fourth Amend-
ment grounds, *id.*, at 149–150, 609 S. E. 2d, at 76, rein-
stated by the intermediate court sitting en banc, 47 Va.

———————

they searched his person there. *Ibid.* Moore does not contend that this
delay violated the Fourth Amendment.

App. 55, 622 S. E. 2d 253 (2005), and finally reversed again by the Virginia Supreme Court, 272 Va., at 725, 636 S. E. 2d, at 400. The Court reasoned that since the arresting officers should have issued Moore a citation under state law, and the Fourth Amendment does not permit search incident to citation, the arrest search violated the Fourth Amendment. *Ibid.* We granted certiorari. 551 U. S. \_\_\_ (2007).

## II

The Fourth Amendment protects "against unreasonable searches and seizures" of (among other things) the person. In determining whether a search or seizure is unreasonable, we begin with history. We look to the statutes and common law of the founding era to determine the norms that the Fourth Amendment was meant to preserve. See *Wyoming* v. *Houghton*, 526 U. S. 295, 299 (1999); *Wilson* v. *Arkansas*, 514 U. S. 927, 931 (1995).

We are aware of no historical indication that those who ratified the Fourth Amendment understood it as a redundant guarantee of whatever limits on search and seizure legislatures might have enacted.[2] The immediate object of the Fourth Amendment was to prohibit the general war-

---

[2] *Atwater* v. *Lago Vista,* 532 U. S. 318 (2001), rejected the view JUSTICE GINSBURG advances that the legality of arrests for misdemeanors involving no breach of the peace "depended on statutory authorization." *Post*, at 1, n. 1 (opinion concurring in judgment). *Atwater* cited both of the sources on which JUSTICE GINSBURG relies for a limited view of common-law arrest authority, but it also identified and quoted numerous treatises that described common-law authority to arrest for minor misdemeanors without limitation to cases in which a statute authorized arrest. See 532 U. S., at 330–332. *Atwater* noted that many statutes authorized arrest for misdemeanors other than breaches of the peace, but it concluded that the view of arrest authority as extending beyond breaches of the peace also reflected judge-made common law. *Id.,* at 330–331. Particularly since *Atwater* considered the materials on which JUSTICE GINSBURG relies, we see no reason to revisit the case's conclusion.

rants and writs of assistance that English judges had
employed against the colonists, *Boyd* v. *United States*, 116
U. S. 616, 624–627 (1886); *Payton* v. *New York,* 445 U. S.
573, 583–584 (1980). That suggests, if anything, that
founding-era citizens were skeptical of using the rules for
search and seizure set by government actors as the index
of reasonableness.

Joseph Story, among others, saw the Fourth Amend-
ment as "little more than the affirmance of a great consti-
tutional doctrine of the common law," 3 Commentaries on
the Constitution of the United States §1895, p. 748 (1833),
which Story defined in opposition to statutes, see Codifica-
tion of the Common Law in The Miscellaneous Writings of
Joseph Story 698, 699, 701 (W. Story ed. 1852). No early
case or commentary, to our knowledge, suggested the
Amendment was intended to incorporate subsequently
enacted statutes. None of the early Fourth Amendment
cases that scholars have identified sought to base a consti-
tutional claim on a violation of a state or federal statute
concerning arrest. See Davies, Recovering the Original
Fourth Amendment*,* 98 Mich. L. Rev. 547, 613–614
(1999);[3] see also T. Taylor, Two Studies in Constitutional
Interpretation 44–45 (1969).

Of course such a claim would not have been available
against state officers, since the Fourth Amendment was a
restriction only upon federal power, see *Barron ex rel.
Tiernan* v. *Mayor of Baltimore*, 7 Pet. 243 (1833). But
early Congresses tied the arrest authority of federal offi-
cers to state laws of arrest. See *United States* v. *Di Re*,

_____

[3] Of the early cases that Davies collects, see 98 Mich. L. Rev., at 613,
n. 174; *id.*, at 614, n. 175, the lone decision to treat statutes as relevant
to the Fourth Amendment's contours simply applied the principle that
statutes enacted in the years immediately before or after the Amend-
ment was adopted shed light on what citizens at the time of the Amend-
ment's enactment saw as reasonable. *Boyd* v. *United States*, 116 U. S.
616, 622–623 (1886).

332 U. S. 581, 589 (1948); *United States* v. *Watson*, 423 U. S. 411, 420 (1976). Moreover, even though several state constitutions also prohibited unreasonable searches and seizures, citizens who claimed officers had violated state restrictions on arrest did not claim that the violations also ran afoul of the state constitutions.[4] The apparent absence of such litigation is particularly striking in light of the fact that searches incident to warrantless arrests (which is to say arrests in which the officer was not insulated from private suit) were, as one commentator has put it, "taken for granted" at the founding, Taylor, *supra*, at 45, as were warrantless arrests themselves, Amar, Fourth Amendment First Principles, 107 Harv. L. Rev. 757, 764 (1994).

There are a number of possible explanations of why such constitutional claims were not raised. Davies, for example, argues that actions taken in violation of state law could not qualify as state action subject to Fourth Amendment constraints. 98 Mich. L. Rev., at 660–663. Be that as it may, as Moore adduces neither case law nor commentaries to support his view that the Fourth Amendment was intended to incorporate statutes, this is "not a case in which the claimant can point to 'a clear answer [that] existed in 1791 and has been generally adhered to by the traditions of our society ever since.'" *Atwater* v. *Lago Vista,* 532 U. S. 318, 345 (2001) (alteration in original).

―――――――

[4] Massachusetts, for example, had a state constitutional provision paralleling the Fourth Amendment, but the litigants in the earliest cases we have identified claiming violations of arrest statutes in the Commonwealth did not argue that their arrests violated the Commonwealth's Constitution. See *Brock* v. *Stimson,* 108 Mass. 520 (1871); *Phillips* v. *Fadden*, 125 Mass. 198 (1878); see also *Tubbs* v. *Tukey*, 57 Mass. 438 (1849) (asserting violation of state common law concerning arrest but not asserting violation of state constitution).

## III

### A

When history has not provided a conclusive answer, we have analyzed a search or seizure in light of traditional standards of reasonableness "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Houghton*, 526 U. S., at 300; see also *Atwater*, 532 U. S., at 346. That methodology provides no support for Moore's Fourth Amendment claim. In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable. *Id.*, at 354; see also, *e.g., Devenpeck* v. *Alford,* 543 U. S. 146, 152 (2004); *Gerstein* v. *Pugh*, 420 U. S. 103, 111 (1975); *Brinegar* v. *United States*, 338 U. S. 160, 164, 170, 175–176 (1949).

Our decisions counsel against changing this calculus when a State chooses to protect privacy beyond the level that the Fourth Amendment requires. We have treated additional protections exclusively as matters of state law. In *Cooper* v. *California,* 386 U. S. 58 (1967), we reversed a state court that had held the search of a seized vehicle to be in violation of the Fourth Amendment because state law did not explicitly authorize the search. We concluded that whether state law authorized the search was irrelevant. States, we said, remained free "to impose higher standards on searches and seizures than required by the Federal Constitution," *id.,* at 62, but regardless of state rules, police could search a lawfully seized vehicle as a matter of federal constitutional law.

In *California* v. *Greenwood*, 486 U. S. 35 (1988), we held that search of an individual's garbage forbidden by California's Constitution was not forbidden by the Fourth Amendment. "[W]hether or not a search is reasonable

within the meaning of the Fourth Amendment," we said, has never "depend[ed] on the law of the particular State in which the search occurs." *Id.*, at 43. While "[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution," *ibid.*, state law did not alter the content of the Fourth Amendment.

We have applied the same principle in the seizure context. *Whren* v. *United States*, 517 U. S. 806 (1996), held that police officers had acted reasonably in stopping a car, even though their action violated regulations limiting the authority of plainclothes officers in unmarked vehicles. We thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices—even practices set by rule. While those practices "vary from place to place and from time to time," Fourth Amendment protections are not "so variable" and cannot "be made to turn upon such trivialities." *Id.*, at 815.

Some decisions earlier than these excluded evidence obtained in violation of state law, but those decisions rested on our supervisory power over the federal courts, rather than the Constitution. In *Di Re*, 332 U. S. 581, federal and state officers collaborated in an investigation that led to an arrest for a federal crime. The Government argued that the legality of an arrest for a federal offense was a matter of federal law. *Id.,* at 589. We concluded, however, that since Congress had provided that arrests with warrants must be made in accordance with state law, the legality of arrests without warrants should also be judged according to state-law standards. *Id.,* at 589–590. This was plainly not a rule we derived from the Constitution, however, because we repeatedly invited Congress to change it by statute—saying that state law governs the validity of a warrantless arrest "in [the] absence of an applicable federal statute*," id.*, at 589, and that the *Di Re* rule applies "except in those cases where Congress has

enacted a federal rule," *id.*, at 589–590.

Later decisions did not expand the rule of *Di Re.  John-son* v. *United States*, 333 U. S. 10 (1948), relied on *Di Re* to suppress evidence obtained under circumstances identical in relevant respects to those in that case.  See 333 U. S., at 12, 15, n. 5.  And *Michigan* v. *DeFillippo*, 443 U. S. 31 (1979), upheld a warrantless arrest in a case where compliance with state law was not at issue.  While our opinion said that "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law," it also said that a warrantless arrest satisfies the Constitution so long as the officer has "probable cause to believe that the suspect has committed or is committing a crime."  *Id.*, at 36.  We need not pick and choose among the dicta: Neither *Di Re* nor the cases following it held that violations of state arrest law are also violations of the Fourth Amendment, and our more recent decisions, discussed above, have indicated that when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same.

B

We are convinced that the approach of our prior cases is correct, because an arrest based on probable cause serves interests that have long been seen as sufficient to justify the seizure.  *Whren*, *supra*, at 817; *Atwater*, *supra*, at 354.  Arrest ensures that a suspect appears to answer charges and does not continue a crime, and it safeguards evidence and enables officers to conduct an in-custody investigation.  See W. LaFave, Arrest: The Decision to Take a Suspect into Custody 177–202 (1965).

Moore argues that a State has no interest in arrest when it has a policy against arresting for certain crimes.  That is not so, because arrest will still ensure a suspect's appearance at trial, prevent him from continuing his

offense, and enable officers to investigate the incident more thoroughly. State arrest restrictions are more accurately characterized as showing that the State values its interests in forgoing arrests more highly than its interests in making them, see, *e.g.*, Dept. of Justice, National Institute of Justice, D. Whitcomb, B. Lewin, & M. Levine, Issues and Practices: Citation Release 17 (Mar. 1984) (describing cost savings as a principal benefit of citation-release ordinances); or as showing that the State places a higher premium on privacy than the Fourth Amendment requires. A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional.

If we concluded otherwise, we would often frustrate rather than further state policy. Virginia chooses to protect individual privacy and dignity more than the Fourth Amendment requires, but it also chooses not to attach to violations of its arrest rules the potent remedies that federal courts have applied to Fourth Amendment violations. Virginia does not, for example, ordinarily exclude from criminal trials evidence obtained in violation of its statutes. See 45 Va. App., at 161, 609 S. E. 2d, at 82 (Annunziata, J., dissenting) (citing *Janis* v. *Commonwealth*, 22 Va. App. 646, 651, 472 S. E. 2d 649, 652 (1996)). Moore would allow Virginia to accord enhanced protection against arrest only on pain of accompanying that protection with federal remedies for Fourth Amendment violations, which often include the exclusionary rule. States unwilling to lose control over the remedy would have to abandon restrictions on arrest altogether. This is an odd consequence of a provision designed to protect against searches and seizures.

Even if we thought that state law changed the nature of the Commonwealth's interests for purposes of the Fourth

Amendment, we would adhere to the probable-cause standard. In determining what is reasonable under the Fourth Amendment, we have given great weight to the "essential interest in readily administrable rules." *Atwater*, 532 U. S., at 347. In *Atwater*, we acknowledged that nuanced judgments about the need for warrantless arrest were desirable, but we nonetheless declined to limit to felonies and disturbances of the peace the Fourth Amendment rule allowing arrest based on probable cause to believe a law has been broken in the presence of the arresting officer. *Id.,* at 346–347. The rule extends even to minor misdemeanors, we concluded, because of the need for a bright-line constitutional standard. If the constitutionality of arrest for minor offenses turned in part on inquiries as to risk of flight and danger of repetition, officers might be deterred from making legitimate arrests. *Id.,* at 351. We found little to justify this cost, because there was no "epidemic of unnecessary minor-offense arrests," and hence "a dearth of horribles demanding redress." *Id.*, at 353.

Incorporating state-law arrest limitations into the Constitution would produce a constitutional regime no less vague and unpredictable than the one we rejected in *Atwater*. The constitutional standard would be only as easy to apply as the underlying state law, and state law can be complicated indeed. The Virginia statute in this case, for example, calls on law enforcement officers to weigh just the sort of case-specific factors that *Atwater* said would deter legitimate arrests if made part of the constitutional inquiry. It would authorize arrest if a misdemeanor suspect fails or refuses to discontinue the unlawful act, or if the officer believes the suspect to be likely to disregard a summons. Va. Code Ann. §19.2–74.A.1. *Atwater* specifically noted the "extremely poor judgment" displayed in arresting a local resident who would "almost certainly" have discontinued the offense and who had "no place to hide and no incentive to flee."

532 U. S., at 346–347. It nonetheless declined to make those considerations part of the constitutional calculus. *Atwater* differs from this case in only one significant respect: It considered (and rejected) federal constitutional remedies for *all* minor-misdemeanor arrests; Moore seeks them in only that *subset* of minor-misdemeanor arrests in which there is the least to be gained—that is, where the State has already acted to constrain officers' discretion and prevent abuse. Here we confront fewer horribles than in *Atwater*, and less of a need for redress.

Finally, linking Fourth Amendment protections to state law would cause them to "vary from place to place and from time to time," *Whren*, 517 U. S., at 815. Even at the same place and time, the Fourth Amendment's protections might vary if federal officers were not subject to the same statutory constraints as state officers. In *Elkins* v. *United States*, 364 U. S. 206, 210–212 (1960), we noted the practical difficulties posed by the "silver-platter doctrine," which had imposed more stringent limitations on federal officers than on state police acting independent of them. It would be strange to construe a constitutional provision that did not apply to the States at all when it was adopted to now restrict state officers more than federal officers, solely because the States have passed search-and-seizure laws that are the prerogative of independent sovereigns.

We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections.

## IV

Moore argues that even if the Constitution allowed his arrest, it did not allow the arresting officers to search him. We have recognized, however, that officers may perform searches incident to constitutionally permissible arrests in

order to ensure their safety and safeguard evidence. *United States* v. *Robinson*, 414 U. S. 218 (1973). We have described this rule as covering any "lawful arrest," *id.*, at 235, with constitutional law as the reference point. That is to say, we have equated a lawful arrest with an arrest based on probable cause: "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; *that intrusion being lawful*, a search incident to the arrest requires no additional justification." *Ibid.* (emphasis added). Moore correctly notes that several important state-court decisions have defined the lawfulness of arrest in terms of compliance with state law. See Brief for Respondent 32–33 (citing *People* v. *Chiagles,* 237 N. Y. 193, 197, 142 N. E. 583, 584 (1923); *People* v. *DeFore*, 242 N. Y. 13, 17–19, 150 N. E. 585, 586 (1926)). But it is not surprising that States have used "lawful" as shorthand for compliance with state law, while our constitutional decision in *Robinson* used "lawful" as shorthand for compliance with constitutional constraints.

The interests justifying search are present whenever an officer makes an arrest. A search enables officers to safeguard evidence, and, most critically, to ensure their safety during "the extended exposure which follows the taking of a suspect into custody and transporting him to the police station." *Robinson, supra,* at 234–235. Officers issuing citations do not face the same danger, and we therefore held in *Knowles* v. *Iowa*, 525 U. S. 113 (1998), that they do not have the same authority to search. We cannot agree with the Virginia Supreme Court that *Knowles* controls here. The state officers *arrested* Moore, and therefore faced the risks that are "an adequate basis for treating all custodial arrests alike for purposes of search justification." *Robinson, supra,* at 235.

The Virginia Supreme Court may have concluded that *Knowles* required the exclusion of evidence seized from Moore because, under state law, the officers who arrested

Moore should have issued him a citation instead. This argument might have force if the Constitution forbade Moore's arrest, because we have sometimes excluded evidence obtained through unconstitutional methods in order to deter constitutional violations. See *Wong Sun* v. *United States*, 371 U. S. 471, 484–485, 488 (1963). But the arrest rules that the officers violated were those of state law alone, and as we have just concluded, it is not the province of the Fourth Amendment to enforce state law. That Amendment does not require the exclusion of evidence obtained from a constitutionally permissible arrest.

\*       \*       \*

We reaffirm against a novel challenge what we have signaled for more than half a century. When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety. The judgment of the Supreme Court of Virginia is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1082

VIRGINIA, PETITIONER *v.* DAVID LEE MOORE

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF VIRGINIA

[April 23, 2008]

JUSTICE GINSBURG, concurring in the judgment.

I find in the historical record more support for Moore's position than the Court does, *ante*, at 3–5.[1] Further, our decision in *United States* v. *Di Re*, 332 U. S. 581, 587–590 (1948), requiring suppression of evidence gained in a search incident to an unlawful arrest, seems to me pinned

---

[1] Under the common law prevailing at the end of the 19th century, it appears that arrests for minor misdemeanors, typically involving no breach of the peace, depended on statutory authorization. See Wilgus, Arrest Without a Warrant, 22 Mich. L. Rev. 541, 674 (1924) ("Neither [an officer] nor [a citizen], *without statutory authority*, may arrest [a defendant] for . . . a misdemeanor which is not a [breach of the peace]" (emphasis added)); 9 Halsbury, Laws of England §§608, 611–612, 615 (1909). See also *Atwater* v. *Lago Vista*, 532 U. S. 318, 342–345 (2001) (noting 19th-century decisions upholding statutes extending warrantless arrest authority to misdemeanors, other than breaches of the peace, committed in a police officer's presence); Wilgus, *supra*, at 551 (warrantless misdemeanor arrests "made under authority of a statute must conform strictly to its provisions; otherwise they will not be valid, and the one arresting becomes a trespasser").

Noting colonial hostility to general warrants and writs of assistance, the Court observes that "founding-era citizens were skeptical of using the rules for search and seizure set by government actors as the index of reasonableness." *Ante*, at 4. The practices resisted by the citizenry, however, served to invade the people's privacy, not to shield it.

to the Fourth Amendment and not to our "supervisory power," *ante*, at 7.[2]  And I am aware of no "long line of cases" holding that, regardless of state law, probable cause renders every warrantless arrest for crimes committed in the presence of an arresting officer "constitutionally reasonable," *ante*, at 6.[3]

I agree with the Court's conclusion and its reasoning, however, to this extent.  In line with the Court's decision

_____

[2] The Court attributes *Di Re*'s suppression ruling to our "supervisory power," not to "a rule we derived from the Constitution."  *Ante*, at 7.  Justice Jackson, author of *Di Re*, however, did not mention "supervisory power," placed the decision in a Fourth Amendment context, see 332 U. S., at 585, and ended with a reminder that "our Constitution [places] obstacles in the way of a too permeating police surveillance," *id.*, at 595.  The *Di Re* opinion, I recognize, is somewhat difficult to parse.  Allied to *Di Re*'s Fourth Amendment instruction, the Court announced a choice-of-law rule not derived from the Constitution: When a state officer makes a warrantless arrest for a federal crime, federal arrest law governs the legality of the arrest; but absent a federal statute in point, "the law of the state where an arrest without warrant takes place determines its validity."  *Id.*, at 588–589.

[3] Demonstrative of the "long line," the Court lists *Atwater*, 532 U. S., at 354, *Devenpeck* v. *Alford,* 543 U. S. 146, 152 (2004), *Brinegar* v. *United States*, 338 U. S. 160, 164, 170, 175–176 (1949), and *Gerstein* v. *Pugh*, 420 U. S. 103, 111 (1975).  *Ante*, at 6.  But in all of these cases, unlike Moore's case, state law authorized the arrests.  The warrantless misdemeanor arrest in *Atwater* was authorized by Tex. Transp. Code Ann. §543.001 (West 1999).  See 532 U. S., at 323.  The warrantless misdemeanor arrest in *Devenpeck* was authorized by Wash. Rev. Code Ann. §10.31.100 (Michie 1997).  In *Brinegar*, whether the warrantless arrest was for a misdemeanor or a felony, it was authorized by state law.  See Okla. Stat., Tit. 22, §196 (1941).  *Gerstein* involved a challenge to the State's preliminary hearing procedures, not to the validity of a particular arrest.  See 420 U. S., at 105.  The record does not indicate whether the respondents' offenses were committed in the officer's presence or whether the arrests were made under warrant.  See *id.*, at 105, n. 1.  But it does indicate that the crimes involved were serious felonies, see *ibid.*, and state law authorized arrest without warrant when "[a] felony has been committed and [the officer] reasonably believes that the [apprehended] person committed it," Fla. Stat. Ann. §901.15(2) (West 1973).

in *Atwater* v. *Lago Vista*, 532 U. S. 318, 354 (2001), Virginia could have made driving on a suspended license an arrestable offense. The Commonwealth chose not to do so. Moore asks us to credit Virginia law on a police officer's arrest authority, but only in part. He emphasizes Virginia's classification of driving on a suspended license as a nonarrestable misdemeanor. Moore would have us ignore, however, the limited consequences Virginia attaches to a police officer's failure to follow the Commonwealth's summons-only instruction. For such an infraction, the officer may be disciplined and the person arrested may bring a tort suit against the officer. But Virginia law does not demand the suppression of evidence seized by an officer who arrests when he should have issued a summons.

The Fourth Amendment, today's decision holds, does not put States to an all-or-nothing choice in this regard. A State may accord protection against arrest beyond what the Fourth Amendment requires, yet restrict the remedies available when police deny to persons they apprehend the extra protection state law orders. See *ante*, at 9. Because I agree that the arrest and search Moore challenges violated Virginia law, but did not violate the Fourth Amendment, I join the Court's judgment.